UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARINA TZAFIR, | CASE NO. 25-cv-02067-JHC-SKV |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI et al., | |
| Respondents. | |

# I
## INTRODUCTION

This matter comes before the Court on Petitioner Marina Tzafir's Petition for Writ of Habeas Corpus (Dkt. # 1) and Motion for Preliminary Injunction and Stay of Removal (Dkt. # 10). The Court has reviewed the materials filed in support of and in opposition to the petition and motion, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition (Dkt. # 1) and STRIKES the Motion (Dkt. # 10) as moot.

# II
## BACKGROUND

Petitioner is a 57-year-old, non-U.S. citizen who was born in the former Uzbek Soviet Socialist Republic. Dkt. # 1 at 4. In 1990, Petitioner immigrated to Israel and later obtained

ORDER - 1

Israeli citizenship. *Id*. Petitioner claims that upon the fall of the Soviet Union in 1991, she lost any claim to citizenship in any of its former territories, including Uzbekistan. *Id*.

It is undisputed that in 1999, Petitioner entered the United States with an Israeli passport on a B-2 Visitor's Visa. *Id*.; *see also* Dkt. # 14 at 4. Petitioner came to the United States with her family, and then soon applied for asylum, withholding of removal, and relief under the Convention Against Torture. Dkt. # 1 at 4. Petitioner's B-2 visa expired while her asylum application was pending. *Id*. In 2004, a U.S. immigration court ordered Petitioner and her family removed to Israel. *Id*. at 5; *see also* Dkt. # 14 at 4. Petitioner unsuccessfully appealed her removal decision to the Board of Immigration Appeals and the Ninth Circuit, and in March 2009, it became administratively final. Dkt. # 14 at 4–5.

Petitioner alleges that after her appeals, she and her family tried to return to Israel but "Israel refused to issue travel documents, so she was not able to leave." Dkt. # 1 at 2, 5. She also alleges that by this time—spring 2009—the family had "lost their Israeli citizenship and had become stateless." *Id*. at 5. Respondents confirm that in spring of 2009, the Department of Homeland Security (DHS) worked with the Israeli consulate to secure travel documents for Petitioner and was informed that Petitioner no longer had Israeli citizenship. Dkt. # 14 at 5. Accordingly, on May 13, 2009, Immigration and Customs Enforcement (ICE) released Petitioner on an Order of Supervision (OSUP). *Id*.; *see also* Dkt. # 1 at 2. The OSUP required Petitioner to check-in with ICE every year, among other conditions. *Id*. Petitioner contends that she complied with this arrangement for 16 years, checking in with ICE every year and satisfying the other conditions of her OSUP. Dkt. # 1 at 5. She also asserts that between 2009 and 2025, she maintained her work authorization and had no OSUP violations. *Id*.

Petitioner contends that on August 5, 2025, she attended her usual ICE check in, at which point ICE "[u]nexpectedly [ ] placed an ankle monitor on her and told her to return to their office

ORDER - 2

on August 22, 2025." *Id*. She alleges that this act occurred "without notice, explanation, or cause." *Id*. at 2. Respondents neither confirm nor deny this event. *See generally* Dkt. # 14.

Petitioner furthers contends that on August 14, 2025, without anything to precipitate a revocation of her OSUP, ICE detained her in Portland, Oregon while she was on her way to work. *Id*. at 2, 5. Petitioner asserts that the only explanation she received for her re-detention was a Notice of Revocation of Release saying, "This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case." *Id*. at 5. The notice cited 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 as the basis for detention and was signed by Erik K. Johnson, ICE's Deputy Field Office Director in Portland. *Id*. at 5–6. Respondents confirm that Petitioner was provided with this Notice of Revocation of Release and that she was taken into ICE custody on August 14, 2025. Dkt. # 14 at 5. Petitioner was then transferred to the Northwest ICE Processing Center in Tacoma (NWIPC), where she remains detained today. Dkt. # 1 at 6.[1]

Petitioner filed a Petition for Writ of Habeas Corpus on October 22, 2025. Dkt. # 1. The Petition claims that Petitioner's ongoing detention at NWIPC violates 8 C.F.R. 241.4(l), 8 C.F.R. 241.13(i)(3), 8 U.S.C. 1231(a), and the Due Process Clause of the Fifth Amendment. *Id*. at 7–8. She therefore requests an order requiring Respondents to immediately release her from their custody and prohibiting Respondents from re-detaining her unless they have executable travel documents and provide her with a notice and a meaningful hearing before re-detention. *Id*. at 8.

---

[1] Petitioner's husband and daughter, Binyamin Tzafir and Sigal Tzafir, were also detained and have filed similar petitions and motions in separate cases before this court. *See* Dkt. # 3 at 2; *see also Binyamin Tzafir v. Bondi et al.*, No. 2:25-cv-02126-JHC; *Sigal Tzafir v. Bondi et al.*, No. 2:25-cv-02070-JHC.

ORDER - 3

Respondents counter that Petitioner has been lawfully detained under the relevant detention authorities and her ongoing detention does not amount to an "unconstitutional" or "indefinite" detention. Dkt. # 14 at 6–8. They also contend that while detained, Petitioner has been "uncooperative with DHS regarding applications for a travel document to effect removal from the United States" and DHS is reasonably certain that Petitioner can obtain a travel document from Uzbekistan, Israel, Russia, or Kazakhstan based on her "demonstrated citizenship or blood ties." *Id*. at 5–6.

On October 31, 2025, Petitioner moved for an Emergency Temporary Restraining Order and Stay of Removal. Dkt. # 3. The Court provisionally granted the Motion on October 31, and officially granted the Motion on November 7, 2025, thereby temporarily enjoining Respondents and their officers, agents, employees, attorneys, and other persons acting on their behalf from removing Petitioner from the Western District of Washington or deporting her from the United States while her habeas petition remains pending. Dkt. ## 4 & 8. Soon after, Petitioner moved for a preliminary injunction to extend the temporary injunction and stay of removal until her habeas petition is resolved. Dkt. # 10.

# III
## Discussion

A.    Legal Standards

    1.    Habeas Relief

Federal district courts have the authority to grant a writ of habeas corpus. 28 U.S.C. § 2241(a). But this relief can be extended only under certain conditions. *See* 28 U.S.C. § 2241(c). One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* "The [habeas] petitioner carries the burden of proving by a

ORDER - 4

preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

2.  Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

The traditional test for evaluating due process claims established by *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[2] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[2] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id.* at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id.* And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id.*; *see Landon v. Plasencia,* 459 U.S. 21 (1982). The Court likewise applies the *Mathews* test here. *See also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying the *Mathews* test and collecting cases that employed this test in the context of immigration detention).

*Id.* at 335.

B.  Analysis

Petitioner contends that she is entitled to habeas relief in part because her continued detention violates her right to due process under the Fifth Amendment. Dkt. # 1 at 2, 8. Respondents do not address Petitioner's due process arguments nor attempt to engage with the *Mathews* factors. *See generally* Dkt. # 14. Instead, Respondents contend that Petitioner's detention is lawful under 8 C.F.R. § 241.13(i) and not "constitutionally indefinite," as Petitioner is likely to be removed in the reasonably foreseeable future. Dkt. # 14 at 6–8. For the reasons below, the Court finds that Petitioner's current detention violates her constitutional right to due process. It thus grants the Petition and declines to address the alternative grounds for habeas relief discussed in the parties' briefing.

1.  Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So it is unsurprising that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482.

That the Government allowed Petitioner to remain in the community for more than 16 years after releasing her on supervision only strengthened her liberty interest. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same). Between May 2009 and August 2025, Petitioner maintained her work

authorization, consistently checked in with ICE, and cared for her seven children, disabled husband, and elderly father. Dkt. # 1 at 5–6. This illustrates that she was released long enough to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby changing her constitutional status and affording her a right to due process. *Pablo Sequen v. Kaiser*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)) (cleaned up). In detaining Petitioner since August 14, 2025, the Government has undeniably deprived Petitioner of a liberty interest protected by the Due Process Clause.

Although the Government asserts that it has the authority to detain noncitizens during and following their removal proceedings, and that it may revoke an OSUP, *see* Dkt. # 14 at 1–4, such arguments have no bearing on the due process issue before the Court. While the Government may detain noncitizens before removing them, noncitizens must still be afforded due process protections before they are detained. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Accordingly, the first *Mathews* factor favors Petitioner.

2.  Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Here, the Government offers only conclusory statements to justify its decision to re-detain Petitioner. For instance, Petitioner's Notice of Revocation of Release states "[The detention] decision has been made based on a review of your official alien file and a

determination that there are changed circumstances in your case." Dkt. # 15-2 at 2; *see also* Dkt. # 1 at 5.  It also states "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you." Dkt. # 15-2 at 2.  But the Notice does not explain what these "changed circumstances" are, nor provide any other justification for re-detention or OSUP revocation .

Likewise, the Government's brief asserts that the Petitioner's OSUP was revoked "based on DHS's determination that she could be removed pursuant to the final removal order." Dkt. # 14 at 5 (citing Dkt. ## 16 at 3 & 15-2 at 2).  But the Government did not acquire a travel document for Petitioner before her arrest nor has it provided other evidence to suggest that Petitioner's deportation in August 2025 was imminent.  *See generally* Dkt. # 14.  The Government also fails to explain why it believes its requests for travel documents from Israel (or any other country) will be imminently approved, especially when such requests were formerly denied.  *See generally id*.  The Government also fails to explain why Petitioner was placed on an ankle monitor on August 5, 2025, or arrested on August 14, 2025, about one week before she was allegedly supposed to appear at an ICE office.  *See generally id*.

Accordingly, the Court finds that the Government fails to support its contention that changed circumstances justify Petitioner's re-detention.  Without such a justification, Petitioner's detention fails to satisfy the essential requirements of due process—notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333, 348 (internal citation and quotation marks omitted).  The Court thus concludes that the Government's procedures were constitutionally insufficient.

In addition, the Court finds that the risk of erroneous deprivation in Petitioner's case is high.  Since 2009, Petitioner has complied with her OSUP and lived, worked, and maintained her status in the community without incident.  Because more than 16 years have passed since

Petitioner was released on supervision, the Court concludes there is a significant risk of an erroneous deprivation of Petitioner's liberty interests if the Government is permitted to re-detain Petitioner without articulating a change in circumstances or providing Petitioner with a meaningful opportunity to be heard. *See Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d at 1323 (collecting cases). Thus, the second *Mathews* factor favors Petitioner.

       3.      Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The Government fails to assert any specific interest that would counsel against the Court finding a due process violation here. *See generally* Dkt. # 14. The Court still acknowledges that the Government likely has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

But although the Court acknowledges that the Government has some interests, it also notes that "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Thus, "the government's interest in detaining [a] petitioner without a hearing is 'low.'" *Id.* (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *see E.A. T.-B.*, 795 F. Supp. 3d at 1323 (same). This is especially true here, as the Government has already determined that Petitioner does not pose a danger to the

ORDER - 9

community, causing it to release her on an OSUP in 2009.  The Government has also provided no evidence that Petitioner will not appear at future proceedings, and in fact, it is uncontested that for 16 years, Petitioner has complied with her OSUP and diligently appeared whenever she was required to by the Government.  On this record, this *Mathews* factor also favors Petitioner.

In sum, all three *Mathews* factors favor Petitioner.  The Government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to her by the Constitution.  As a result, she has proven by a preponderance of the evidence that she "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief.  28 U.S.C. § 2241(c).

## IV
### CONCLUSION

For these reasons, the Court:

(1) GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1).

(2) ORDERS that Petitioner must be released from custody immediately on the same conditions of release previously imposed before her arrest in August 2025.[3]  Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until she is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

(3) STRIKES the Motion for Preliminary Injunction (Dkt. # 10) as moot.

(4) DIRECTS the clerk to send uncertified copies of this Order to all counsel of record.

---

[3] *See Y.M.M. v. Wamsley*, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025).

ORDER - 10

Dated this 9th day of January, 2026.

John H. Chun
United States District Judge

ORDER - 11